Peck, J.
Two points are presented in this case worthy of serious consideration; and though the amount in controversy is small, it is no reason for escaping from principle. Being myself not satisfied with the opinion delivered on the point touching the items in the account, which, it is assumed, saves the bar, (some of them being within three years next before blunging the action,) I will first confine myself to the consideration of this question.*
The rule is thus given, “that where there have been mutual, current and unsettled dealings and accounts between the parties, and any of the items are within six years, they are,of themselves evidence (therebeing such open accounts,) that the defendant did promise to pay; and the reason seems to he, because the mutual accounts between the parties, for any item of which credit has been given within six years, are of themselves evidence of there being such an open account, and of a promise to pay the balance; therefore, that sort of evidence is as proper on the issue of non assumpsit within six years, as any other evidence of the acknowledgment of the debt *405 by the defendant, or of his promise to pay it;” and that a replication of a promise to pay within six years lets in the evidence. To sustain this, it is assumed that the latter items show that the dealings have not been closed, and that no action has accrued, and that as the action had not occurred by putting an end to the dealings, the action in the above form of pleading lies for the whole account, the last item carrying the balance with it.
The argument in my opinion proves too much; for if the action does not accrue when the party chooses to put an end to it by bringing his suit on the delivery of any item, it follows, that in cases where the mutual c'onsent of both is wanting to close the account, the defendant could on that ground plead in abatement of the action; for as the concurrence of both is necessary to make the contract, if it be incomplete, because the account is not closed, it must follow that defendant may by plea abate the action, on the ground that the cause of it has not arisen.
The error, as I humbly conceive, arose out of a practice upon the action of account; the action on the case in assumpsit having been substituted in the place of the former action, an arbitrary rule had to be adopted, which treats the account under the latter form of action as closed, when in fact it was not so; and the rule adopted, of making all the items of an account one entire thing, as if acknowledged or signed, was a mere fiction of the judges to reach what they no doubt esteemed the justice of the case. But the effect of it is a repeal of the statute of limitations; no equitable consideration, or supposed justice of the case, will justify a departure from the plain letter of the statute.
We have always held, in this country, that the statute of limitation is as honest a defence as any other, and may be relied upon with as much confidence. In considering other of our statutes, and especially that for the prevention of frauds, we prefer a strict adherance even to the *406 letter, to that of latitudinarian interpretation. Newnan vs. Hays and Carroll, 3 Yerger’s Rep. 18.
Even in England, where the judges at first had been less inclined to favor the plea, in latter times have let it in with full effect. They no doubt saw the evil of making rules to obviate the force of the plea; rules, which under the guise of doing justice, as was supposed, defeated a statute made for repose; and every days, experience must have proved that stale demands were likely to be set up and sustained; unless the statute presumed the evidence of satisfaction had been lost; and that the injustice on this hand had been greater than the supposed loss occasioned by letting in the plea according to its letter. Hence the departure of the judges from the rule early established, and hence the passage of the act of 9 George IV. ch. 14, which provides, that to take a case out of the statute, there shall be a signed promise in writhing; this conclusion is fairly inferrable from the words of that statute. Taking our statutes all together, and the inference is irresistable, that it never was intended that limitations, as a plea, should be evaded by the mere circumstance of a single item being entered within the period'of three years.
The book-debt law, as we commonly call it, illustrates this position. There the party, by his own oath, is let in to prove his book; but the statute forbids the proof of any item of longer standing than two years. Here he is made a witness competent to establish the account; but then the evidence shall not be heard to reach items of more-than two years standing. What is expressed as a positive rule in this statute, cutting off the stale items, should also have been the rule under the statute of three years. They are acts upon the same subject; and though they have different matters to operate upon, still as the rules given are for the admission of evidence, they should be construed alike; at least, the positive expression in thl book-debt act ought to caution us in lessoning by con *407 Struct ion the force of the act of three years. Admit the rule the bank contends for, that because it has given a credit, the action is not barred to any portion of the account. It must be seen by the most superficial observer, how easy it would be to remove the operation of 'the bar, either by making a fictitious credit on the account; or to induce a dealing for some item, however trifling, as a mere pretext to save the bar, the making an entry of which would have the effect intended.
We have said during the present term, that we will not tolerate the principle, that a party shall, by his own imme diate act make the evidence to sustain his cause. Steel and Streeter vs. Matthews. For the same reason it was denied in that case, in the form'attempted'to be denied in this.
I feel as strongly inclined to respect opinions long established as any of the judges, but I will not become the slave of them. I must retain some freedom of opinion, and when I differ, claim the right of expressing that difference, with my reasons for it. On this point, I feel confident that the reasons already satisfactory to my mind, might, had I time to pursue it, be greatly amplified and more conclusively inferred. On the other point, which draws in question the constitutionality of the bank charter, I forbear to give an opinion.
Green, J. concurred.
Gatuon, Ch. J.
It is objected, that the Bank of the State of Tennessee is a mere non-entity, and incapable to sue; that there is no incorporation of persons. The act of incorporation, (1820, ch. 7 and 8,) provide for a president and ten directors, who are to have perpetual succession until the first day of July, 1843, with a fund of one million of dollars, to constitute a bank, to be known by its corporate name of the “Bank of the State of Tennessee;” and to be a body politic and corporate, and *408 to be capable of sums; and being sued by this name. Because oí the certain death oí individuals, and the destruction of individual rights, it often becomes necessary, for the public good, to have particular rights kept on foot, by a legal succession of individuals, enjoying a kind of legal immortality; as the incorporation of trustees of colleges and academies for the advancement of learning; the incorporation of chambers of commerce in cities for the promotion of trade; the incorporation of mechanic’s institutes for the promotion of the mechanic arts, &c. These corporations are grounded on public considerations, and have succession, and a name by which they act, independent of natural capacities. So of the Bank of the State of Tennessee. A public fund is vested in corporate hands for management, the same as the college funds, the academy funds, and common school lands. 1 Bl. Com. 467: 2 Bac. Ab. 2. The power to sue is well enough conferred, and we think the suit for so much money “loaned and advanced” to the defendant was well sustained by proof that he obtained the money on checks from the Bank. He, by mistake, overchecked, supposing he had money in Bank, and this was an advance and loan on the part of the Bank.
The next objection is, that James P. Clark, the surety to the prosecution bond, was discharged by the court, another bond taken, and rMr. Clark admitted as a witness for the plaintiff. Who is, and who is not competent, as a witness depends on judicial precedents and the practice of the courts. Nothing is belter settled in this State, than that the prosecution surety may be discharged from his suretyship, other surety be given, and the first surety be introduced as a witness. The bond is involved in the litigation, is part of the proceeding, and subject to judicial control; but were it otherwise, the witness is rendered competent by the act. The practice has been common in every court in the State, and is not now open to investigation.
*409 3d. It is insisted, the bank book of Mr. Craighead . , . . . . . , could not be given in evidence against him. Ordinarily the bank book of an individual is competent evidence against him. He furnishes the book, has the entries made in it, and when it is made up, generally at the end of the month, he withdraws from the Bank his checks, and is furnished with the best means of correcting any errors that may exist. It is a stated account, which, if retained without objection, is taken to be true. In this case Mr. Craighead made his objections, and caused a credit of three hundred dollars to be entered. He admitted to Mr. Clark, who attempted to settle the account with him, that all the items on the book were correct; after which proof, not the slightest reason existed why it should not be given in evidence to the jury.
Note. The remainder of Judge Catron’s opinion in this cause was withdrawn by him, as appears from the following note:
“ Craighead vs. The Bank.■ — In this cause I had delivered my opinion in accordance with the British authorities; but my brother judges disagree with me, and.are clearly of opinion, that items in an account of more than three years’ standing are barred by the statute oí limitations, and do not draw after items within three years; and not being sufficiently clear that my opinion to the contrary is a just construction of the statute, at the request of the other members of the court, I withdraw that part of the opinion treating of this point, and assent to the opinion delivered.
April 15, 1835. J. .Catron.’*

 The opinion delivered by Catron, C. J. on this point, was withdrawn by him.